858 F.2d 1325
 Steven DOE and Margaret Doe, individually and as the natural
guardians of Jane Doe and Jean Doe, minor
children, Appellants,
v.
HENNEPIN COUNTY; Hennepin County Community Services
Department Social Services Division--Child Protection;
Hennepin County Community Services Department Social
Services Division--Child Protection--Acute Unit; Raymond
Ahrens, Division Director, individually and in his official
capacity; Milton Henry, supervisor, individually and in his
official capacity; Gail Guthrie, Child Protection Worker,
individually and in her official capacity; Carolyn McHenry,
Child Protection Worker, individually and in her official
capacity; Judith DuPre, Legal Section Worker, in her
official capacity; Mindy Mitnick, supervisor, individually
and in her official capacity; Richard Merwin, supervisor,
individually and in his official capacity; and James
Christianson, supervisor, individually and in his official
capacity, Appellees.
 No. 87-5401.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 10, 1988.
Decided Oct. 6, 1988.
Rehearing and Rehearing En Banc Denied Nov. 21, 1988.
 
 David E. Lasker, Madison, Wis., for appellants.
 Thomas Johnson, Minneapolis, Minn., for appellees.
 Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Stephen and Margaret Doe, individually and as the natural guardians of their children, appeal summary judgments entered by the district court[1] in favor of Hennepin County, the City of Mound, Minnesota, and various agencies and individuals engaged in social work for several government bodies. In an action brought under 42 U.S.C. Sec. 1983, the Does alleged a violation of their civil rights in the handling of a complaint following reports of sexual abuse of their children. The Does' children were taken from their home for sixteen days and were returned after the allegations of abuse proved to be unfounded. The Does argue that this separation from their children, along with a failure to provide proper social services as mandated by statute, deprived them of their constitutional rights. The district court dismissed certain claims and entered summary judgment on the others, ruling that while statutes and regulations may have been violated, there was no deprivation of the Does' constitutional rights and that many of the defendants were shielded by qualified immunity. On appeal the Does argue that there were genuine issues of material fact for trial and that they are entitled to a hearing on their claims. We affirm the judgment of the district court.
 
 
 2
 On December 7, 1982 the Hennepin County Child Protection Division received a call from Adrian Yackley informing them that the Does' two children, ages two and five, were involved in sexually precocious behavior and that the father while under the influence of marijuana had engaged in sexual behavior involving one of the children.
 
 
 3
 Although Minnesota law required an immediate investigation and offer of protective services by the Child Care Protection Agency, the Agency did nothing until the informant called again on December 13. The Agency then reported the complaint to the city police department, which undertook an investigation on December 14. On December 17, the police visited the Does at their home to discuss the complaint. On December 20, Mrs. Doe called the Child Protection Agency and asked it to investigate the matter and provide social services. Instead of providing Mrs. Doe with the social services she requested, and without providing notice to the Does, the Agency prepared an emergency petition to remove the children from the home. On December 21, a Minnesota district court judge issued a warrant removing the Doe children from their parents' home. That evening two city police officers and two sheriff's deputies went to the Doe home and removed the children. The juvenile court held a hearing the following day at which the Does were present and represented by counsel. The juvenile court continued the emergency order, keeping the children in agency custody.
 
 
 4
 On January 5, the Does were first visited by a county social worker, who concluded there was no reason to keep the children separated from their parents. On January 6, the Does settled the matter with the agency; the Does agreed to receive counseling by a court appointed psychologist and their children were returned to them.
 
 
 5
 The Does brought this civil rights claim under 42 U.S.C. Sec. 1983 and a conspiracy claim under 42 U.S.C. Sec. 1985(3). In its first order, the district court dismissed the Does' complaint as to Yackley, the informant, and dismissed the claim brought under section 1985(3). Doe v. Hennepin County, No. 4-84-115 (June 26, 1984). On July 1, 1987 the district court entered a summary judgment in favor of the Hennepin County defendants. The district court held that the Does failed to identify any protectable liberty interests violated by these defendants. The court followed our decision in Myers v. Morris, 810 F.2d 1437 (8th Cir.1987), concluding that the government officials, having at least an arguable cause to believe that the Does were molesting their children, were entitled to qualified immunity and that neither MINN.STAT.ANN. Sec. 626.556[2] nor the regulations[3] adopted by the state conferred constitutionally protected rights, as asserted by the Does. The district court found no evidence that the defendants acted willfully or with malice, and while in conducting their investigation the defendants erred in some matters such as not providing proper notice to the Does and in not acting quickly enough, the district court determined that these errors did not constitute constitutional violations. Doe v. Hennepin County, No. 4-84-115 (July 1, 1987).
 
 
 6
 Finally, the district court entertained a motion to reconsider filed by the Does as well as motions for summary judgment filed on behalf of the remaining defendants. The district court denied the motion for reconsideration, entered summary judgment on the federal claims against all parties, and dismissed state law claims for lack of jurisdiction. Doe v. Hennepin County, No. 8-84-115 (Aug. 13, 1987). In so doing, the district court pointed out the inconsistencies of the Does' allegations. When the Does first brought the action they contended that the complaints against them were false and groundless, and that because of a failure to conduct a proper investigation, the children were improperly removed from their home. Then as the litigation proceeded, and even before the Myers decision, the Does changed their emphasis to the county's failure to fulfill its obligations to provide social services to them after receiving child abuse allegations.
 
 
 7
 The district court recognized that the city and county agencies had failed to follow MINN.STAT.ANN. Sec. 626.556 and the related regulations by failing to: (1) immediately investigate the first report of sexual abuse within twenty-four hours, (2) offer the parents an opportunity to place the children voluntarily, and (3) offer protective services before removing the children. Again the district court, citing Myers, concluded that even though there had been a failure to comply with applicable state laws, the statutes and regulations were not the source of a liberty interest or property entitlement giving rise to a constitutional claim. Myers, 810 F.2d at 1469.
 
 
 8
 On appeal the Does argue that there were genuine issues of material fact which prevent entry of summary judgment. The Does first maintain that the defendants' failure to comply with MINN.STAT.ANN. Sec. 626.556 and related regulations before seeking to remove the Doe children from their parents' custody denied them due process. Second, the Does claim that defendants actions of judicial deception at the emergency removal hearing deprive them of a protected liberty interest without procedural due process.
 
 I.
 
 9
 The Does' primary claim is that the district court erred in failing to find a deprivation of a liberty interest or property entitlement in the defendants' failure to comply with MINN.STAT.ANN. Sec. 626.556 and related regulations. First, the Does contend that county and city officials displayed an abuse of process by failing to follow the Minnesota statute, thereby violating their liberty interest in family unity. The Does argue that if the procedures had been properly followed, they would not have suffered a traumatic separation from their children for sixteen days. The district court relied on Myers v. Morris, a case with remarkably similar facts. Myers, 810 F.2d 1437 (8th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). In Myers, children suspected of being abused by their parents were removed from their home by an agency of the court, which failed to comply with the procedures set out in the same Minnesota statute as is at issue here. The parents then brought a section 1983 action alleging that their due process rights were violated by the government's failure to follow the Minnesota statute. In Myers, we held that neither MINN.STAT.ANN. Sec. 626.556 nor its related regulations embodied or conferred constitutionally protected rights. Id. at 1469. The broad language and mandate of this statute and its procedural regulations simply do not create a constitutional liberty interest in due process.
 
 
 10
 Second, the Does maintain they have a property interest in the social services required by MINN.STAT.ANN. Sec. 626.556 and its related regulations. The Does argue that the word "shall" in the statute, which requires certain reporting and investigative procedures, creates a constitutionally protected entitlement. Again the district court properly followed Myers holding that in the context of the statutory scheme neither MINN.STAT.ANN. Sec. 626.556 nor its related regulations bestow upon the Does a property interest in social services.
 
 
 11
 To enjoy a property interest in a government benefit a person must have more than an abstract need or desire for the benefit or a unilateral expectation of receiving it, but instead must have a legitimate claim of entitlement. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Although the Does desired or even expected the social services set forth in the Minnesota statute, they have no legitimate claim of entitlement. To have an entitlement the benefit must be clearly definable; public assistance, social security or unemployment benefits are examples of such. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). As the district court observed, the social services defined by Minnesota statutes will not be proper in some cases, and immediate separation of the family may be necessary. The provision of social services is qualified by the considerable discretion placed in the hands of those who administer it. The district court also pointed to the lack of specificity of the Minnesota statute, and it did not err in concluding that there was no specific entitlement to such services.
 
 
 12
 The Does also contend on appeal that the district court erred in its analysis by solely relying on considerations discussed in Myers. The Does claim that the government's acts, regardless of whether they violate MINN.STAT.ANN. Sec. 626.556, fall below the minimum standards of due process required by the Constitution.
 
 
 13
 The Does argue that Taylor v. Ledbetter, 818 F.2d 791, 794 (11th Cir.1987), recognizes a section 1983 claim where an official is charged with failing to exercise an affirmative duty.[4] Taylor, however, was based on a special relationship between the state and an institutionalized person and dealt specifically with injuries sustained by a child in a foster home. Because the Doe children lived at home with their parents the state could not have this type of special relationship or control over the children. The Does argue that a special relationship is given broader meaning by Archie v. City of Racine, 826 F.2d 480 (7th Cir.1987), which found such a special relationship between a fire department ambulance dispatcher and a person seeking ambulance or medical service. Rehearing en banc was granted in Archie, however, and with three judges dissenting, the Seventh Circuit held that a section 1983 action could not be based on a claim that violation of a state law amounted to an unconstitutional abuse of power. The court also refused to allow a claim based on the dispatcher's gross negligence, and held that the Constitution did not require the state to supply effective rescue services. Archie, 847 F.2d 1211 (7th Cir.1988) (en banc). The Does' argument thus fails to convince us that the district court erred in finding no constitutional violation in the removal of the Doe children.
 
 
 14
 Additionally, the state may intervene on behalf of abused children, thereby infringing upon a parent's liberty interest in the family if the state provides an adequate postdeprivation hearing. Davis v. Page, 618 F.2d 374, 381 (5th Cir.1980). The Does were provided with a postdeprivation hearing one day after the children were removed, in which the Does were represented by counsel, testified on their own behalf, and called witnesses. We affirm the district court's decision that the Does' constitutional rights were not violated.
 
 II.
 
 15
 The Does also contend that because of false allegations made by agency officials in the emergency removal hearing, they were deprived of their liberty interest in family unity. The essence of the alleged deceptions, according to the Does, were false statements by agency officials that the Does were planning to send the children to Chicago to avoid investigation and exaggerations of the childrens' precocious sexual behavior. The Does maintain that this negated the inherent procedural safeguards of the ex parte emergency removal hearing. This claim is barred by qualified immunity unless evidence of malice or improper motives on the part of defendants is proved. Myers, 810 F.2d at 1457. Allegations of malice are not sufficient to defeat immunity if the defendant acted in an "objectively reasonable manner." Id. at 1457 (citing Floyd v. Farrell, 765 F.2d 1, 6 (1st Cir.1985)). The district court has found no evidence of willfulness or malice on the part of agency officials. The district court did note that certain allegations were exaggerated and that agency officials made false inferences at the hearing. However, these errors do not rise to the level of constitutional significance because there was no evidence of motive to fabricate evidence or malice towards the Does. We affirm the district court's ruling on this matter.
 
 
 16
 We have carefully reviewed the Does' other claims and find none of them persuasive. We therefore affirm the district court's orders, and the summary judgment entered denying the Doe claims.
 
 
 17
 HENLEY, Senior Circuit Judge, concurring.
 
 
 18
 I concur in the result reached by the court, and in main I agree with the court's reasoning, but write separately to express some misgiving about due process and shock at the manner in which these child abuse cases were handled by local officials. Cf. Myers v. Morris, 810 F.2d 1437, 1470 (8th Cir.) (F. Gibson, Senior Circuit Judge, concurring), cert. denied, --- U.S. ----, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987).
 
 
 19
 While it cannot be gainsaid that failure to follow Minnesota statutes and administrative rules does not amount to a denial of due process, what the district court may have overlooked is that, Myers notwithstanding, appellants may still have stated a Sec. 1983 claim if the procedures actually followed did not comport with due process.
 
 
 20
 The right of personal choice in matters of family life is one of the liberties protected to some extent by the due process clause of the fourteenth amendment. Smith v. Organization of Foster Families for Equality & Reform, 431 U.S. 816, 842-43, 97 S.Ct. 2094, 2108-09, 53 L.Ed.2d 14 (1977). Defining the particular dictates of due process requires the balancing of three factors:
 
 
 21
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 22
 Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).
 
 
 23
 The private interest here, preservation of the family from governmental intermeddling, would, in my opinion, be of the highest order. As an offset, however, the government has a strong interest in protecting children from abuse and neglect.
 
 
 24
 At the very least, the parents were entitled to demand that the State conduct a minimally adequate investigation before forcibly removing the children from the home. Here, the social workers' lackadaisical attitude at the outset (i.e., failure to quickly investigate Yackley's allegations) is totally at odds with their subsequent haste in petitioning for removal of the children. Weight is added to appellants' due process claim by governmental reliance on what has been described charitably as "exaggerated" allegations and on "false inferences" by agency officials.
 
 
 25
 In the totality of the circumstances, I have serious doubt that the procedures actually followed comport with due process. Even so, I cannot disagree with the court's holding that appellees are protected by qualified immunity. The district court found no evidence of malice or improper motives. And this court, relying on Myers, supra, has chosen to affirm. While I think it is arguable that appellees did not act in an "objectively reasonable manner," id. at 1455, the result reached by the court is one with which I am not prepared to disagree.
 
 
 26
 Thus, as indicated, I concur.
 
 
 
 [1]
 The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota
 
 
 [2]
 MINN.STAT.ANN. Sec. 626.556 is the general statute concerning child protection. Subdivision 10 of that statute, entitled "Duties of local welfare agency upon receipt of a report", provides in part:
 The local welfare agency shall immediately investigate and offer protective social services for purposes of preventing further abuses, safeguarding and enhancing the welfare of the abused or neglected minor, and preserving family life whenever possible.
 
 
 [3]
 The Minnesota Department of Public Welfare promulgated regulations providing more specific requirements. They provide in part:
 Subp. 2. Complaints of neglect or abuse. The local social service agency must accept all complaints alleging that a child has been physically or sexually abused or neglected. * * * Upon receiving such complaints, the local social service agency shall immediately notify the local police or sheriff's department.
 (A.) All reports shall be assessed at the time they are received to determine the agency's initial response.
 For Complaints alleging that a child is * * * likely to experience physical injury due to abuse an immediate on site contact with the family and/or child is required.
 When a child is not in need of immediate care but is allegedly physically or sexually abused, the local social service agency shall contact the family within 24 hours.
 * * *
 (B.) Where contacts with the family are required the child protection worker shall assess the validity of the complaint.
 * * *
 (E.) If the child protection worker determines that a child is in need of immediate care due to circumstances * * * the parents must be given the opportunity to voluntarily place the child or seek an alternative that in the worker's judgment assures the safety of the child.
 (F.) If when given the opportunity the parents are unwilling or unable to cooperate, the child protection worker shall petition the court for immediate custody of the child or seek the assistance of a police officer in taking the child into custody.
 * * *
 Subp. 3. Keeping the child in his house. Where the need for protective intervention has been established, the local social service agency shall, whenever possible, provide services that preserve the child within the family unit while at the same time insuring the child of a safe environment. * * *
 Subp. 4. Court intervention. If services necessary to provide the child a safe environment are rejected, the child protection worker shall petition the court for authorization to intervene.
 MINN.R. 9560.0208 (1982).
 
 
 [4]
 Taylor sets forth two requirements to satisfy a section 1983 claim: the official's failure to act was a substantial factor leading to a violation of a constitutionally protected liberty interest and the responsible official displayed deliberate indifference. Taylor, 818 F.2d at 794