ANGELA R. and Carrie G., by their next friend Merry Alice HESSELBEIN; David M., by his next friend Georgia Jackson; Jesse T., Lisa S., Serena M., and Crystal P., by their next friend Dottie Gray; Eric D., by his next friend Charlotte Carlson; Charles S. and Damon T., by their next friend Earlon Major, Plaintiffs–Appellees,

v.

Bill CLINTON, Governor of Arkansas; Terry Yamauchi, Director of the Arkansas Department of Human Services, Defendants–Appellants.

No. 92–2459.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1993.

Decided July 13, 1993.

322

Angela Jegley and Debby Thetford Nye, Little Rock, AR, argued, for defendants-appellants.

Martha A. Matthews, San Francisco, CA, argued (William L. Grimm, San Francisco, CA, Griffin J. Stockley, Little Rock, AR, and Marcia McIvor, Fayetteville, AR, on the brief), for plaintiffs-appellees.

Before LOKEN, HANSEN, and VAN SICKLE,* Senior District Judge.

LOKEN, Circuit Judge.

Defendant state officials appeal the district court's entry of a consent decree ordering a "comprehensive revision of the child welfare system" in Arkansas. Given the important federal and state interests at stake, we conclude that the enforcement provisions of the decree are too ambiguous to be approved. Accordingly, we vacate the consent decree and remand for further proceedings.

## I.

Ten named plaintiffs commenced this class action under 42 U.S.C. § 1983 alleging that the Arkansas Department of Human Services (DHS or the State) administers its child welfare programs in violation of the rights of foster children and abused or neglected children under the Fourteenth Amendment, the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620–28, 670–79, and the Child Abuse Prevention and Treatment Act, 42 U.S.C. §§ 5101–06a. Plaintiffs' ninety-three page complaint asserted, among other things, that DHS and its Division of Children and Family Services (DCFS) have failed to investigate complaints of abuse and neglect, to make reasonable efforts to keep families together, to provide adequate care to children placed in foster homes, and to properly train foster parents.

On October 10, 1991, pursuant to a stipulation, the district court certified a class consisting of:

* The HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

All children who, since July 1, 1988, have or will become known to DHS by reason of a complaint of abuse or neglect, and all children who are now or will be in the custody of DHS as the result of an emergency 72–hour placement or an abuse, neglect, or Family in Need of Services (FINS) petition.

On February 27, 1992, after months of negotiations, the parties filed a Joint Motion for Approval of Settlement and a proposed order. As described in the motion:

The [proposed] Order incorporates by reference the Arkansas Child Welfare Reform Document, a detailed plan governing defendants' operation of [DHS] and [DCFS] in all the major areas addressed by plaintiffs' Complaint, including: out of home placement; health care; staff resources; training; family services; child protective services; and case planning and case review.

That same day, the Governor signed into law Act One of the First Extraordinary Session of 1992 ("Act One"), which adopted the Child Welfare Reform Document "as the requirements to be met by [DHS] and [DCFS] in their operation of the Child Welfare System in Arkansas." 1992 Ark. Acts (1st Ex. Sess.) 1, § 1(a). Section 1(b) of Act One directed the State Treasurer to make available such funds "as may be required to meet the requirements of the Arkansas Child Welfare Reform Document," subject to the following proviso:

Provided, however, the State Treasurer shall make no such transfers after June 30, 1992 unless she receives certification from the Governor that an order has been issued closing the case of *Angela R., et al v. Bill Clinton, et al,* subject only to being reopened by either party to determine compliance or noncompliance with the Arkansas Child Welfare Reform Document.

The district court tentatively approved the settlement on March 19 and ordered that a fairness hearing be held April 30. On March 25, the Supreme Court issued its decision in *Suter v. Artist M.,* —— U.S. ——, —— n. 10, ——, 112 S.Ct. 1360, 1368 n. 10, 1370, 118 L.Ed.2d 1 (1992), holding that 42 U.S.C. §§ 671(a)(9) and (15), portions of the Adop-

tion Assistance and Child Welfare Act, do not create private rights enforceable under § 1983. The State then filed a Motion to Review Class Definition, suggesting that *Suter* "brings into question this Court's subject matter jurisdiction" and places the court "in a position to enforce state law only, contrary to the holding of *Pennhurst State School vs. Halderman,* [465] U.S. 89, [104 S.Ct. 900, 79 L.Ed.2d 67], and the Eleventh Amendment of the United States Constitution." In particular, the State argued that *Suter* and our decision in *Doe v. Hennepin County,* 858 F.2d 1325 (8th Cir.1988), *cert. denied,* 490 U.S. 1108, 109 S.Ct. 3161, 104 L.Ed.2d 1023 (1989), deprived the court of jurisdiction over the claims of class members not in state custody.

On May 5, 1992, the district court denied the State's motion and ordered entry of the proposed order as a consent decree. The court concluded that *Suter* does not foreclose all of the claims asserted by all class members; that the settlement satisfies the standard articulated in *Local 93, International Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986), and therefore the consent decree may afford broader relief than the court could have awarded after trial; and that the State waived its Eleventh Amendment immunity by enacting Act One and by consenting to the decree. The court expressly retained jurisdiction "for the purpose of enforcing [the] Order and the Child Welfare Reform Document." The State appeals the district court's refusal to narrow the class and its entry of the consent decree.

## II.

■ Plaintiffs commenced this action to compel the State to comply with federal statutes and the Constitution in dealing with foster children and abused or neglected children. There can be no doubt that the district court had jurisdiction to consider these claims. *See Hagans v. Lavine,* 415 U.S. 528, 539–41, 94 S.Ct. 1372, 1380–81, 39 L.Ed.2d 577 (1974). It is true that the class members who are foster children in the State's custody have stronger constitutional claims than abused or neglected children who have not

been placed in foster care. *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 1005–06, 103 L.Ed.2d 249 (1989). *Compare Norfleet v. Arkansas Dep't of Human Servs.*, 989 F.2d 289, 292–93 (8th Cir.1993), *with Doe v. Hennepin County*, 858 F.2d at 1329. With respect to the statutory claims, *Suter* held that no class member may obtain relief for violations of 42 U.S.C. §§ 671(a)(9) or (a)(15), and the analysis in *Suter* might ultimately compel the conclusion that the other federal statutes upon which plaintiffs rely do not create an enforceable private right of action on their behalf. But these questions go to the merits of plaintiffs' claims, not to the district court's jurisdiction. Because *Suter* does not "inescapably render the claims frivolous," *Koke v. Stifel, Nicolaus & Co.*, 620 F.2d 1340, 1346 (8th Cir.1980), we think it clear that the district court had jurisdiction to approve the proposed settlement and to enter a consent decree resolving the claims of all class members.

### III.

■ The State requests that we set aside portions of the consent decree entered to implement the parties' settlement. Although the law favors settlements, federal courts in adopting consent decrees are not mere " 'recorder[s] of contracts' from whom parties can purchase injunctions." *Firefighters*, 478 U.S. at 525, 106 S.Ct. at 3077. *See Donaghy v. City of Omaha*, 933 F.2d 1448, 1459 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 938, 117 L.Ed.2d 109 (1992). Rather, as Justice Cardozo stated in *United States v. Swift & Co.*, 286 U.S. 106, 115, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932), a consent decree is a judicial act, and "the adopting court is free to reject agreed-upon terms as not in furtherance of statutory objectives." *System Federation v. Wright*, 364 U.S. 642, 651, 81 S.Ct. 368, 373, 5 L.Ed.2d 349 (1961). Before approving a class action settlement and entering the requested consent decree, then, a federal court must determine "that the settlement is consistent with the statute

the consent judgment is to enforce and fairly and reasonably resolves the controversy in a manner consistent with the public interest." *Citizens for a Better Environment v. Gorsuch,* 718 F.2d 1117, 1128 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984).

In this case, the core of the parties' settlement is the Child Welfare Reform Document, a fifty-page document setting forth specific, detailed mandates to govern the manner in which DHS and DCFS will discharge their responsibilities to foster children and abused and neglected children under Arkansas law. Neither party has challenged the substantive provisions contained in this document. By enacting Act One, the State has made the Reform Document a part of state law, so there can be little doubt that DHS and DCFS intend to comply with the Reform Document's requirements, including those requirements that will benefit children who are not in the State's custody.

■ Thus, the dispute in this case involves not the substantive obligations imposed by the settlement, but rather the future enforcement of those obligations. The consent decree's enforcement provision is ambiguous:

> The Court shall retain jurisdiction of this matter solely for the purpose of enforcing this Order and the Child Welfare Reform Document.
>
> The Clerk is directed to close this case in his records without prejudice to the rights of the parties to seek enforcement from the Court. If the Compliance and Oversight Committee[1] has found by majority vote substantial compliance or noncompliance with the Document, and such finding has, in the opinion of any party, remained disputed and unresolved for at least 90 days then either party may seek review by the District Court.

By its wording, this provision suggests that only the plaintiffs as a class may seek to enforce the decree and only by challenging decisions of the Compliance Committee.

---

1. Act One established the Child Welfare Compliance and Oversight Committee "to ensure that [DHS] complies with the ... Reform Document." § 4(a). The Committee determines substantial compliance or noncompliance with the Reform Document and "make[s] recommendations to the Governor for corrective action to achieve compliance." §§ 4(e) & (f).

Plaintiffs nevertheless assert that any class member will be entitled to apply to the district court for an order enforcing any provision of the consent decree, including the entire Reform Document. In the wake of *Suter*, the State objects to such a wholesale transfer of jurisdiction to the federal court and seeks to limit the damage by removing pre-placement children from the class,[2] while leaving the State's obligations under Act One and the Reform Document intact.

■ From the standpoint of judicial administration, this impasse is unacceptable. While the Reform Document is a contract between the settling parties, it is the enforcement mechanism that makes the consent decree a judicial act. Unless that mechanism is clearly defined—in terms of who may bring an enforcement action, for what kinds of violations, and so forth—it is impossible to determine (i) the precise benefits class members are receiving, (ii) the extent to which the decree imposes federal control over state functions, or (iii) the burden that approval of the decree will impose upon the federal judiciary. In this very fundamental respect, the decree fails to set forth its terms with the specificity required by Fed.R.Civ.P. 65(d). *See Schmidt v. Lessard,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). We conclude that the district court abused its discretion in approving a consent decree that did not specifically resolve these enforcement issues.

We therefore remand this case to the district court for further consideration of the proposed settlement. In considering whether to approve any amended consent decree, the district court should weigh the following:

■ 1. The parties' pre-approval debate over enforcement of the decree suggests that their purported agreement failed to resolve fundamental remedy issues that are essential to any settlement. Plaintiffs argue that the consent decree permits any member of the class to enforce the Reform Document in federal court, even if the alleged violation involves only matters of state law. The State objects that it never consented to such a remedy. In resolving this dispute, the district court must bear in mind that it "is not free ... to impose unagreed-to equitable remedies that it might have fashioned 'had the plaintiff established his factual claims and legal theories in litigation.'" *SEC v. Levine,* 881 F.2d 1165, 1181 (2d Cir.1989), quoting *United States v. Armour & Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971).

■ Moreover, the Eleventh Amendment prohibits a federal court from granting relief against state officials for conduct that violates only state law. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). While Eleventh Amendment immunity can be waived, such waiver must be unequivocally expressed. *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974). For a state statute to constitute a waiver "it must specify the State's intention to subject itself to suit in federal court." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146–47, 87 L.Ed.2d 171 (1985). *See also Port Authority Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 306–08, 110 S.Ct. 1868, 1873–74, 109 L.Ed.2d 264 (1990); *Burk v. Beene,* 948 F.2d 489, 493–94 (8th Cir.1991). Although Act One expressly acknowledges the pendency of this litigation, we conclude that it falls considerably short of the "unequivocal waiver" of Eleventh Amendment immunity that *Atascadero* requires. Thus, Eleventh Amendment concerns make it all the more important to ensure that any approved enforcement provisions are the result of a consensual process and are clearly spelled out in the decree.

■ 2. Federal courts have interests independent of those of the states in preserving the appropriate relation between sovereigns and in efficiently allocating scarce federal resources to the adjudication of federal claims. *See Kasper v. Board of Election Comm'rs,* 814 F.2d 332, 340–41 (7th Cir. 1987); *Sansom Comm. v. Lynn,* 735 F.2d 1535, 1543–44 (3d Cir.) (Becker, J., concurring), *cert. denied,* 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 358 (1984). As *Pennhurst*

---

**2.** In 1990, there were 16,317 reports of child abuse or neglect but only about 1200 children placed in foster care. Thus, pre-placement children are by far the larger component of the class.

makes clear, a federal court's interest in remedying violations of state law is decidedly minor, so that expending significant federal judicial resources enforcing consent decree provisions that concern only issues of state law is rarely justifiable. Thus, even if the State were willing to agree that any and all provisions of the Child Welfare Reform Document would be enforceable in federal court through the consent decree, its willingness to transfer this burden of enforcing its own laws to the federal court "does not oblige the court to accept." *Kasper,* 814 F.2d at 340. *See also Georgevich v. Strauss,* 772 F.2d 1078, 1085 (3d Cir.1985) (en banc), *cert. denied,* 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986). Rather, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode,* 423 U.S. 362, 379, 96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976).

3. Although a consent decree may save federal judicial resources in the short term, its entry is often only the beginning of extended judicial involvement. *See, e.g.,* Note, *Federalism and Federal Consent Decrees Against State Governmental Entities,* 88 Colum.L.Rev. 1796, 1807–08 (1988). Federal courts operate according to institutional rules and procedures that are poorly suited to the management of state agencies. *See* Donald L. Horowitz, *Decreeing Organizational Change: Judicial Supervision of Public Institutions,* 1983 Duke L.J. 1265, 1303–05. And consent decrees entered in institutional reform litigation "reach beyond the parties involved directly in the suit and impact on the public's right to sound and efficient operation of its institutions." *Rufo v. Inmates of Suffolk County Jail,* — U.S. ——, ——, 112 S.Ct. 748, 759, 116 L.Ed.2d 867 (1992). Therefore, the manner in which the Child Welfare Reform Document is to be enforced by a court of equity "must be structured to take into account 'the well-established rule that the government has traditionally been granted the widest latitude in the dispatch of its own internal affairs.'" *Bresgal v. Brock,* 843 F.2d 1163, 1171 (9th Cir.1987), quoting *Rizzo,* 423 U.S. at 378–79, 96 S.Ct. at 607–08.

## IV.

In conclusion, we have no concern with the parties agreeing that the State's enactment of Act One provides a suitable basis for settling this action. We are concerned that the parties' serious dispute over the consent decree's ambiguous enforcement provision reflects an absence of the sufficiently well-defined agreement that is an essential predicate to the entry of an appropriate consent decree. We are also concerned that the district court carefully weigh the constitutional, statutory, and institutional factors that bear upon the task of crafting a suitable equitable decree in this type of litigation. Therefore, we vacate the Consent Decree entered June 8, 1992, and remand this case to the district court for further proceedings consistent with this opinion.