Harlan J. JACOBSEN, d/b/a Country Singles, Single Scene and Jacobsen Distribution, Plaintiff,

v.

DEPARTMENT OF TRANSPORTA- TION; State of Iowa; Steven F. McMenamin, Rest Area Administra- tor, in that capacity and as an individ- ual; Will Zitterich, Office of Mainte- nance, DOT, in that capacity and as an individual; Thomas J. Vilsack, Governor of Iowa, in that capacity and as an individual; Mark Hunacek, as an individual, Defendants.

No. C03–4097–MWB.

United States District Court, N.D. Iowa, Western Division.

Aug. 26, 2004.

**1218**

Harlan L. Jacobsen, Sioux Falls, SD, pro se.

Gordon E. Allen, AAG, Des Moines, IA, for Defendants.

David A. Ferree, Iowa Department of Transportation, Ames, IA, for Counter Claimant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. *INTRODUCTION AND BACKGROUND* ................................... 1219
  A. *Procedural Background* ........................................ 1219
  B. *Factual Background* .......................................... 1219

II. *LEGAL ANALYSIS* ................................................. 1221
  A. *Standards For Summary Judgment* .............................. 1221
    1. *Requirements of Rule 56* ................................... 1221
    2. *The parties' burdens* ...................................... 1221
  B. *Claimed Violations of 42 U.S.C. § 1985* ...................... 1222
    1. *Requirements for claim under 42 U.S.C. § 1985(3)* .......... 1222
    2. *Evidence of class-based animus* ............................ 1223
  C. *Claimed Violations of 42 U.S.C. § 1983* ...................... 1224
    1. *Eleventh Amendment* ........................................ 1224
      a. *The constitutional bar* .................................. 1224
      b. *Suit against the "state"* ................................ 1225
      c. *Eleventh Amendment immunity and exceptions to it* ....... 1226
        i. *Congressional abrogation* .............................. 1226
        ii. *State waiver.* ........................................ 1227
        iii. *The nature of the waiver* ............................ 1227
        iv. *Failure to meet the "stringent" standard* ............ 1227
        v. *Express waiver* ........................................ 1228
      d. *Waiver in this case* ..................................... 1229
    2. *Suit against defendants in their individual capacities* .... 1231
      a. *Governor Vilsack* ........................................ 1231
      b. *Assistant Iowa Attorney General Hunacek* ................ 1231
      c. *McMenamin and Zitterich's actions* ...................... 1232

III. *CONCLUSION* ................................................... 1235

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On October 10, 2003, plaintiff Harlan L. Jacobsen brought this *pro se* lawsuit alleging that defendants, Steven F. McMenamin, the Administrator of Rest Areas of the Iowa Department of Transportation ("IDOT"), William Zitterich, the Director of IDOT's office of maintenance services, Thomas J. Vilsack, the Governor of the State of Iowa, and Mark Hunacek, an Assistant Iowa Attorney General violated his constitutional and civil rights by interfering with Jacobsen's placement of news racks for his two publications at public rest areas along the interstate highway system in Iowa notwithstanding the injunctive relief granted by this court in *Jacobsen v. Rensink*, No. C96–4074–MWB (March 15, 1997).

Defendants have filed a Motion for Summary Judgment on all of Jacobsen's claims. First, in their motion, defendants assert that Jacobsen's allegations do not constitute a violation of 42 U.S.C. § 1985. Second, defendants contend that Eleventh Amendment sovereign immunity precludes action under 42 U.S.C. § 1983 against the State of Iowa or its functional equivalents. Defendants further contend that respondeat superior does not form a proper basis for suit under § 1983 as to the claims against Governor Vilsack. Moreover, defendants assert that Assistant Iowa Attorney General Hunacek took no action and had no authority to take any action to deprive Jacobsen of a protected right. Defendants further argue that the IDOT's policy regarding placement of news racks in rest areas is reasonable in light of the IDOT's ability to regulate such conduct in a nonpublic forum. Defendants also contend that the actions of defendants Zitterich and McMenamin were taken in good faith and are entitled to qualified immunity.

### B. Factual Background

The summary judgment record reveals that the following facts are undisputed. Plaintiff Harlan Jacobsen is the publisher of several publications distributed on Iowa's interstate highways though the use of vending machines. On March 15, 1997, the court issued a preliminary injunction in *Jacobsen v. Rensink*, No. C96–4074–MWB (March 15, 1997), regarding the placement of Jacobsen's machines and specifying what rules could be adopted by the IDOT in regulating vending machines. Specifically, the court enjoined the IDOT from interfering with or moving Jacobsen's newspaper news racks, except that they could enforce the following restrictions:

a. Newspaper vendors may be prohibited from attaching their news racks to historical markers, or placing news racks in locations that in any way obstruct or impede the public's viewing of historical markers.

b. Newspaper vendors may be prohibited from anchoring their news racks with exposed wires or cables that pose a danger to the public.

c. Newspaper vendors may be regulated as to the manner and method by which they anchor their news racks.

d. News racks may be prohibited from areas within ten feet of any door, bench, trash receptacle, or historical marker.

e. News racks may be prohibited from sidewalks. However, where there is an area of concrete at a rest area whose width exceeds the width of a standard public sidewalk, then newspaper vendors shall be permitted to place newspaper news racks on the concrete so long as the news racks are not placed in a location that

could impede the ordinary and customary flow of pedestrian traffic.

*Jacobsen v. Rensink*, No. C96–4074–MWB, at *2 (March 15, 1997)

The preliminary injunction was modified on June 24, 1998, to prevent the placement of machines within ten feet of drinking fountains and rule or regulation signs. The IDOT then adopted a policy regulating vending machine placement that was consistent with the court's order.[1] At some point after that time, Jacobsen began placing his newspaper vending machines in areas which did not comply with the IDOT's court compliant rules regarding vending machine placement. The placement of these news racks obstructed pedestrian traffic and/or created safety issues. Jacobsen also chose to anchor some of his news racks without a utility line locate being performed and in a manor that could result in the cutting of underground cables.

In 2003, defendants Zitterich and McMenamin made the decision to move Jacobsen's machines so they would in compliance with the preliminary injunction order of this court. Defendant McMenamin issued instructions to rest area technicians to move the non-compliant vending machines. Jacobsen sent letters to IDOT personnel threatening lawsuits against them personally if they did not return his machines to their previous locations at the rest areas. The IDOT refused to return the machines to their previous locations, maintaining that they could move the machines to locations at the rest areas which were in compliance with the rules in conformity to the preliminary injunction order. Jacobsen retaliated by moving his machines into positions that violated the preliminary injunction order and possibly the American with Disabilities Act

("ADA"). The Federal Highway Administration has demanded that the IDOT submit a remediation proposal to correct Jacobsen's actions or be deemed to be in violation of the ADA. The Federal Highway Administration specifically noted in its correspondence that:

> Attached are photographs that were recently taken at several central Iowa Interstate rest areas. Interstate rest areas are required to comply with the Americans with Disabilities Act (ADA) Standards for Accessible Design. The placement of these newspaper boxes results in violation of 28 C.F.R. Part § 36 Section 4.1.2(1) which states "at least one accessible route complying with 4.3 shall be provided within the boundary of the site from public transportation stops, accessible parking spaces passenger loading zones if provided, and public streets or sidewalks, to an accessible building entrance." To further clarify, 23 C.F.R. § 36 Section 3.5 defines accessible route as "A continuous unobstructed path connecting all accessible elements and spaces of a building or facility."
>
> Since both building entrances are accessible, each must have an accessible route. The placement of the newspaper boxes introduces an obstruction to the path connecting the building to the parking area. This violates the previously discussed ADA requirements.
>
> The introduction of these obstacles into the accessible route significantly increases the effort necessary to access the building. ADA accessibility requirements address the mobility reduced and visually impaired in addition to wheelchair-bound individuals. With the aging Iowa population there are an increasing number of individuals who have visual

---

1. Surprisingly, neither party has provided the court with a copy of the actual IDOT policy which adopts the court's limitation on IDOT restrictions on vending machine placement at Iowa rest stops.

impairments or mobility issues who necessitate aids for walking.

Defendants' App. at 20.

Governor Vilsack had no personal involvement or knowledge of the actions of defendants McMenamin or Zitterich.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.*, 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill*, 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. #1 v. City of Sioux Ctr.*, 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part*, 202 F.3d 1035 (8th Cir.), *cert. denied*, 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.*, 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd*, 205 F.3d 1347, 2000 WL 84400 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.*, 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.*, 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim … is asserted … may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.… *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir.1999); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394.

### 2. The parties' burdens

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston*, 133 F.3d at 1107; *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show

there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Rather, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach*, 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same). The court will apply these standards to defendants' Motion for Summary Judgment.

### B. Claimed Violations of 42 U.S.C. § 1985

#### 1. Requirements for claim under 42 U.S.C. § 1985(3)

In their motion for summary judgment, defendants initially assert that Jacobsen's claim under 42 U.S.C. § 1985 fail as a matter of law. Thus, the court must first consider whether Jacobsen has generated a genuine issue of material fact on his claim under § 1985.[2]

**2.** Although Jacobsen has alleged a violation of 28 U.S.C. § 1985, he has not specified which subsection of that statute forms the basis for his claim. Section 1985 provides:

(1) Preventing officer from performing duties
If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;
(2) Obstructing justice; intimidating party, witness, or juror
If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;
(3) Depriving persons of rights or privileges
If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

In order to establish a § 1985(3) claim a plaintiff must show that the defendants: "(1) 'conspir[ed]...' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'" *Bogren v. Minnesota*, 236 F.3d 399, 409 (8th Cir.2000) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir.1996))(quoting in turn *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)), *cert. denied*, 534 U.S. 816, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001); *see Larson ex rel Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir.1996) (*en banc*). The cases interpreting this provision, which originated under the Ku Klux Klan Act of 1871, are extensive but need not be fully examined here, for a defect renders Jacobsen's § 1985 claim untenable as a matter of law. The United States Supreme Court has instructed that in order to steer clear of "the constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law," *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), it has interpreted § 1985 to apply only to conspiracies which were motivated by an invidious, class-based, discriminatory animus. *Bray*, 506 U.S. at 268, 113 S.Ct. 753; *United Brotherhood of Carpenters and Joiners v. Scott*, 463 U.S. 825, 834–35, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Thus, the second or "purpose" element of a conspiracy claim under § 1985(3) requires that the plaintiff prove a class-based "'invidiously discriminatory animus.'" *Larson*, 76 F.3d at 1454 (quoting *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir.1989)). "Moreover, the plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Larson*, 76 F.3d at 1454. The plaintiff can satisfy this burden by pointing to at least some facts which would suggest that "defendants selected the particular course of action 'because of' not merely 'in spite of' its adverse effects upon an identifiable group." *Andrews*, 98 F.3d at 1079–80 (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993)).

### 2. Evidence of class-based animus

Here, nowhere in the Complaint is there any suggestion that the alleged con-

or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

28 U.S.C. § 1985. Because there are no allegations remotely coming within the scope of § 1985(1) or § 1985(2), the court concludes that Jacobsen's § 1985 claim must be premised on an alleged violation of § 1985(3).

spiracy was motivated by an invidious, class-based animus against Jacobsen. Moreover, Jacobsen has neglected to identify himself as a member of any protected class. Instead, he has maintained that defendants' conspiracy was purely, and simply, motivated for the purpose of depriving him as an individual of his First Amendment rights "to distribute his views and ideas in public foot traffic portions of rest areas owned by the State of Iowa." Compl. at ¶ 16. Jacobsen has not presented any evidence showing that the alleged conspiracy was motivated by any animus toward him as a member of a protected class. Rather, Jacobsen has merely alleged that defendants conspired to cause him harm. For this reason, Jacobsen's claim under § 1985(3) must be denied. Therefore, this portion of defendants' Motion for Summary Judgment is granted and Jacobsen's § 1985(3) claim is dismissed.

### C. Claimed Violations of 42 U.S.C. § 1983

#### 1. Eleventh Amendment

Defendants also assert that the doctrine of sovereign immunity precludes Jacobsen's claims under 42 U.S.C. § 1983 against the IDOT and the other defendants in their official capacities. Therefore, the court turns to consider defendants' contention that the claims against the IDOT and the other defendants in their official capacities must be dismissed on the ground that the claims are all barred under the Eleventh Amendment to the United States Constitution.

#### a. The constitutional bar

The Eleventh Amendment to the United States Constitution provides as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or

by Citizens or Subjects of any Foreign State."

U.S. CONST. amend. XI. The Eleventh Amendment, as interpreted by the Supreme Court, is born of the recognition of the "vital role of the doctrine of sovereign immunity in our federal system":

A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued. As Justice Marshall well has noted, "because of the problems of federalism inherent in making one sovereign appear against its will in the courts of the other, a restriction upon the exercise of federal judicial power has long been considered to be appropriate in a case such as this." *Employees Missouri Dept. of Public Health and Welfare v. Department of Public Health and Welfare, Missouri,* 411 U.S. 279, 294, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (concurring in result). Accordingly, in deciding this case we must be guided by "[t]he principles of federalism that inform Eleventh Amendment doctrine." *Hutto v. Finney,* 437 U.S. 678, 691, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (footnotes omitted; emphasis in the original). The Eighth Circuit Court of Appeals has observed,

Almost since its enactment, courts have struggled with the boundaries created by this Amendment. These endeavors have resulted in the creation of many legal fictions which control the Eleventh Amendment's interpretation. For example, although the Amendment's terms bar only suits against states by nonresidents, an early case established that the Eleventh Amendment also prohibits suits against a state by that state's residents. *Hans v. Louisiana,* 134 U.S. 1, 15–16, 10 S.Ct. 504, 507–08, 33 L.Ed. 842

(1890). The Amendment's terms address only federal suits in law and equity, yet it has been construed to also bar certain admiralty suits. *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 683 n. 17, 102 S.Ct. 3304, 3313–14 n. 17, 73 L.Ed.2d 1057 (1982). Other cases have interpreted the Eleventh Amendment to prohibit suits against a state by both foreign nations and Indian tribes. *Monaco v. Mississippi*, 292 U.S. 313, 330, 54 S.Ct. 745, 751, 78 L.Ed. 1282 (1934); *Standing Rock Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135, 1141 (8th Cir.1974).

*Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 504–05 (8th Cir.1995) (footnote omitted); *see also Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir.2000) ("The Eleventh Amendment bars federal court jurisdiction over state law claims against unconsenting states or state officials when the state is the real, substantial party in interest, regardless of the remedy sought."); *Williams v. Missouri*, 973 F.2d 599, 599–600 (8th Cir.1992) ("The Eleventh Amendment bars suits against a State by citizens of that same State in federal court," citing *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

Although the bar of the Eleventh Amendment to suits against the state itself " 'exists whether the relief sought is legal or equitable,' " *Williams*, 973 F.2d at 600 (quoting *Papasan*, 478 U.S. at 276, 106 S.Ct. 2932), the Eighth Circuit Court of Appeals has noted that "[o]f course, legal fictions have also eroded Eleventh Amendment immunity by, among other things, permitting suits against state officials for injunctive and prospective relief." *Thomas*, 50 F.3d at 505 (citing *Edelman v. Jordan*, 415 U.S. 651, 663–64, 94 S.Ct.

1347, 39 L.Ed.2d 662 (1974)); *see also Glick v. Henderson*, 855 F.2d 536, 540 (8th Cir.1988) (recognizing the exception for suits against state officials for injunctive relief, citing *Pennhurst*, 465 U.S. at 104, 104 S.Ct. 900, and *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and explaining "that this exception was based on the theory that because a state is without power to authorize a state official to act in violation of federal law, any state official taking such actions is acting beyond his official authority and is thereby 'stripped of his official or representative character,' " quoting *Pennhurst*, 465 U.S. at 104, 104 S.Ct. 900).[3]

### b. Suit against the "state"

In *Thomas*, the Eighth Circuit Court of Appeals also provided an outline of the analysis to be used in interpreting the scope of Eleventh Amendment immunity:

Given the nature of Eleventh Amendment jurisprudence, we reject a "plain words" interpretation of the Eleventh Amendment....

Rather than look to the Amendment's literal terms, we will more generally examine Eleventh Amendment jurisprudence to determine precisely what qualifies as a suit against the state. " 'What is a suit? We understand it to be the prosecution, or pursuit, of some claim, demand, or request. In law language, it is the prosecution of some demand in a Court of Justice.' " *Missouri v. Fiske*, 290 U.S. 18, 26, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933) (quoting *Cohens v. Virginia*, 19 U.S. 264, 6 Wheat. 264, 407, 5 L.Ed. 257 (1821)). A later articulation of the Eleventh Amendment's reach characterizes a suit against the state more concretely. A suit is against the state if

**3.** In *Ex parte Young*, 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that Eleventh Amendment immunity was not available to state officials in suits seeking prospective injunctive relief for violations of federal law.

" 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' " *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 908–09 n. 11, 79 L.Ed.2d 67 (1984) (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)). *Thomas,* 50 F.3d at 505 (footnotes omitted). In the present case, the court concludes that IDOT has the right to assert Eleventh Amendment immunity. It is also readily apparent, applying the standards stated in *Thomas,* this action is a "suit" within the meaning of the Eleventh Amendment. *Thomas,* 50 F.3d at 505. Jacobsen is prosecuting a claim in this court of justice, *id.* (citing *Fiske,* 290 U.S. at 26, 54 S.Ct. 18, in turn citing *Cohens,* 6 Wheat. at 407, 5 L.Ed. 257), and a judgment on his claims would indeed "expend itself on the public treasury or domain, or interfere with the public administration,' or ... the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' " *Thomas,* 50 F.3d at 505 (quoting *Pennhurst State Sch. & Hosp.,* 465 U.S. at 101 n. 11, 104 S.Ct. 900, in turn quoting *Dugan,* 372 U.S. at 620, 83 S.Ct. 999). The court must therefore consider whether the claims against these defendants are barred by the Eleventh Amendment.

#### c. Eleventh Amendment immunity and exceptions to it

"When a state is directly sued in federal court, it must be dismissed from litigation upon its assertion of Eleventh Amendment immunity unless one of two well-established exceptions exists." *Barnes v. Missouri,* 960 F.2d 63, 64 (8th Cir.1992); *see also Egerdahl; Williams,* 973 F.2d at 600 (quoting *Barnes* for this proposition). Those two exceptions are "congressional abrogation" and "state waiver." *Egerdahl v. Hibbing Community College,* 72 F.3d 615, 619 (8th Cir.1995); *Williams,* 973 F.2d at 600; *Barnes,* 960 F.2d at 64.

*i. Congressional abrogation.* As to congressional abrogation, in *Pennhurst,* the Supreme Court concluded that "Congress has power with respect to rights protected by the Fourteenth Amendment to abrogate the Eleventh Amendment immunity." *Pennhurst,* 465 U.S. at 99, 104 S.Ct. 900; *see also Egerdahl,* 72 F.3d at 619 ("Congress may pass legislation under the Commerce Clause or Section 5 of the Fourteenth Amendment to override states' Eleventh Amendment Immunity,") citing (*Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 14–23, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), and *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)); *Glick,* 855 F.2d at 540 (quoting *Pennhurst*). This exception applies only when there is "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several states.' " *Pennhurst,* 465 U.S. at 99, 104 S.Ct. 900; *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (" 'Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute,' " quoting *Dellmuth v. Muth,* 491 U.S. 223, 229–30, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989)); *accord Egerdahl,* 72 F.3d at 619 ("Congress must make its intention to abrogate states' immunity 'unmistakably clear in the language of the statute,' ") quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Glick,* 855 F.2d at 540. To ascertain whether Congress abrogated the states' Eleventh Amendment immunity in enacting legislation, a court must examine two issues: "first, whether Congress has 'unequivocal-

ly expresse[d] its intent to abrogate the immunity,' and second, whether Congress has acted 'pursuant to a valid exercise of power.'" *Seminole Tribe of Florida*, 517 U.S. at 55, 116 S.Ct. 1114 (internal citations omitted) (quoting *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)); *see also Dellmuth*, 491 U.S. at 229–30, 109 S.Ct. 2397; *Atascadero State Hosp.*, 473 U.S. at 243, 105 S.Ct. 3142.[4] This exception, however, is inapplicable here since Jacobsen has not asserted the existence of such a congressional abrogation. Thus, the court will turn its attention to the state waiver exception.

*ii. State waiver.* Turning to the "state waiver" exception, the Eighth Circuit Court of Appeals has reiterated that where a state or state agency waives or intends to waive its immunity, "of course, no Eleventh Amendment problem exists." *Thomas*, 50 F.3d at 505. However, just as congressional abrogation requires unmistakable language in the federal statute, "[a]s a general matter, only unmistakable and explicit waiver of Eleventh Amendment immunity" by the state will suffice. *Id.* at 506 (citing *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 305, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990), *Atascadero State Hosp.*, 473 U.S. at 241, 105 S.Ct. 3142, and *Edelman*, 415 U.S. at 673, 94 S.Ct. 1347); *Angela R. ex rel. Hesselbein v. Clinton*, 999 F.2d 320, 325 (8th Cir.1993) ("While Eleventh Amendment immunity can be waived, such waiver must be unequivocally expressed," citing *Edelman*, 415 U.S. at 673, 94 S.Ct. 1347).

*iii. The nature of the waiver.* In order to constitute a waiver of Eleventh Amendment immunity by the state, a state statute "'must specify the State's intention to subject itself to suit in federal court." *Angela R.*, 999 F.2d at 325 (quoting *Atascadero State Hosp.*, 473 U.S. at 241, 105 S.Ct. 3142, and also citing *Feeney*, 495 U.S. at 306–08, 110 S.Ct. 1868, and *Burk v. Beene*, 948 F.2d 489, 493–94); *Faibisch v. University of Minn.*, 304 F.3d 797, 800 (8th Cir.2002) ("To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so."). Furthermore, the Eighth Circuit Court of Appeals has described the Supreme Court's test of waiver as "stringent." *Hankins v. Finnel*, 964 F.2d 853, 856 (8th Cir.), *cert. denied sub nom. Missouri v. Hankins*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992); *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir.1991). As the Eighth Circuit Court of Appeals reemphasized,

> A State "is deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the test as will leave no reason for any other reasonable construction."

*Cooper*, 226 F.3d at 969 (quoting *Atascadero*, 473 U.S. at 239–40, 105 S.Ct. 3142); *see Hankins*, 964 F.2d at 856 (same) (quoting *Atascadero*, 473 U.S. at 239–40, 105 S.Ct. 3142).

*iv. Failure to meet the "stringent" standard.* The Eighth Circuit Court of

---

**4.** In *Seminole Tribe of Florida*, the United States Supreme Court held that Congress did not possess the authority under the Indian Commerce Clause to abrogate Eleventh Amendment state sovereign immunity. *Seminole Tribe of Florida*, 517 U.S. at 47, 116 S.Ct. 1114. In doing so, the Court overruled its prior decision in *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), where it had held that the Commerce Clause gave Congress the power to abrogate the states' Eleventh Amendment immunity, in addition to its power under section five of the Fourteenth Amendment. *See Seminole Tribe of Florida*, 517 U.S. at 65, 116 S.Ct. 1114. After *Seminole Tribe of Florida*, section five of the Fourteenth Amendment remains as the sole authority by which Congress may abrogate the States' immunity. *Id.* at 60, 116 S.Ct. 1114.

Appeals has been reluctant to find waivers meeting the "stringent" standard required. For example, in *Angela R.*, the Eighth Circuit Court of Appeals found that an Arkansas statute that acknowledged the pendency of the case then before the federal court nonetheless fell "considerably short of the 'unequivocal waiver' of Eleventh Amendment immunity that *Atascadero* requires." *Angela R.*, 999 F.2d at 325. The court therefore found that the Eleventh Amendment barred an action to enforce a settlement agreement in federal court. *Id.* In *Burk*, a state indemnification statute that referred to damages awards by federal courts was nonetheless read *not* to provide "a clear and unequivocal waiver of the state's Eleventh Amendment immunity." *Burk*, 948 F.2d at 493. The statute in question in *Burk* provided that

> [t]he State of Arkansas shall pay actual, but not punitive, damages adjudged by a state or federal court ... against officers or employees of the State of Arkansas ... based on an act or omission by the officer or employee while acting without malice and in good faith within the course and scope of his employment and in the performance of his official duties.

ARK. CODE ANN. § 21–9–203(a) (Michie 1987); *Burk*, 948 F.2d at 493 n. 3 (quoting the Arkansas statute). The court rejected the plaintiff's argument that it would be unnecessary for the legislature to provide for indemnification for liability in federal lawsuits if in fact the state had not waived its immunity to suits for damages in federal court. *Burk*, 948 F.2d at 493. The lack of unequivocal waiver in this indemnification statute was bolstered by the court's finding that another statute provided "quite explicitly, that state officials *are* entitled to immunity in ordinary circumstances." *Id.* (citing ARK. CODE ANN. § 19–10–305(a) (Michie Supp.1991), with emphasis in the original). Waivers may also be "partial" rather than "general." *Hankins*,

964 F.2d at 856 (citing cases). Thus, in *Hankins*, the court found that the state had waived its immunity only as to the judgment in the case by participating in a trial of the case on the merits. *Id.* Similarly, in *Barnes*, the court found that a waiver of immunity in a Missouri statute, MO. REV. STAT. § 537.600, did not include the types of claims raised by the plaintiff, which were claims for violation of the First Amendment, the Fourteenth Amendment, and the First Amendment Privacy Protection Act of 1980, 42 U.S.C. § 2000aa–6(a), arising from the defendants obtaining the plaintiff's arrest record and disseminating it to the public. *Barnes*, 960 F.2d at 65. More recently, in *Cooper*, the Eighth Circuit Court of Appeals found that the fact that Minnesota waived its immunity to suit in Minnesota's state courts was insufficient to waive its Eleventh Amendment immunity. *Cooper*, 226 F.3d at 969.

*v. Express waiver.* The court therefore returns to Supreme Court precedent to identify language that would be sufficiently explicit to constitute a state's waiver of its Eleventh Amendment immunity to suits in federal court. In *Feeney*, the Court found that both New York and New Jersey had "expressly consent[ed] to suit in expansive terms" with language that the states "consent to suits, actions, or proceedings of any form or nature at law, in equity or otherwise ... against the Port of New York Authority." *Feeney*, 495 U.S. at 306, 110 S.Ct. 1868 (citing N.J. STAT. ANN. § 32:1–157 (West 1963), and N.Y. UNCONSOL. LAWS § 7101 (McKinney 1979)). However, the Court rejected the assertion that this expansive consent could be interpreted to encompass suit in federal court as well as state court, because "such a broadly framed provision may also reflect only a State's consent to suit in its own courts." *Id.* The Court nonetheless found an express waiver by resolving any ambiguity in the consent to suit provision by looking to the statutory venue provi-

sion. *Id.* at 307, 110 S.Ct. 1868. That venue provision "expressly indicated that the States' consent to suit extends to suit in federal court," because the provision provided that " '[t]he foregoing consent [of N.J. Stat. Ann. § 32:1–157 (West 1963); N.Y. Unconsol. Laws § 7101 (McKinney 1979)] is granted on the condition that venue . . . shall be laid within a county or judicial district, established by one of said States or by the United States, and situated wholly or partially within the Port of New York District.' " *Feeney*, 495 U.S. at 307, 110 S.Ct. 1868 (quoting N.J. Stat. Ann. § 32:1–162 (West 1963); N.Y. Unconsol. Laws § 7106 (McKinney 1979)). The Court found that this provision "eliminates the danger . . . that federal courts may mistake a provision intended to allow suit in a State's own courts for a waiver of Eleventh Amendment Immunity." *Id.* The court rejected an argument that a venue provision could shape the Court's construction of a consent to suit provision, because the venue provision "directly indicates the extent of the States' waiver embodied in the consent provision." *Id.* Furthermore,

> The States passed the venue and consent to suit provisions as portions of the same Acts that set forth the nature, timing, and extent of the States' consent to suit. The venue provision expressly refers to and qualifies the more general consent to suit provision. Additionally, issues of venue are closely related to those concerning sovereign immunity, as this Court has indicated by emphasizing that '[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State School and Hospital v. Halderman*, 465 U.S. at 99, 104 S.Ct. 900.

*Feeney*, 495 U.S. at 307–08, 110 S.Ct. 1868.

### d. Waiver in this case.

The issue of waiver in this case turns on the waiver contained in the Iowa State Tort Claims Act. *See* Iowa Code § 669.4. Iowa Code § 669.4 provides that:

> The district court of the state of Iowa for the district in which the plaintiff is resident or in which the act or omission complained of occurred, or where the act or omission occurred outside of Iowa and the plaintiff is a nonresident, the Polk county district court has exclusive jurisdiction to hear, determine, and render judgment on any suit or claim as defined in this chapter. However, the laws and rules of civil procedure of this state on change of place of trial apply to such suits.

> The state shall be liable in respect to ·such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances, except that the state shall not be liable for interest prior to judgment or for punitive damages. Costs shall be allowed in all courts to the successful claimant to the same extent as if the state were a private litigant.

> The immunity of the state from suit and liability is waived to the extent provided in this chapter.

> A suit is commenced under this chapter by serving the attorney general or the attorney general's duly authorized delegate in charge of the tort claims division by service of an original notice. The state shall have thirty days within which to enter its general or special appearance.

> If suit is commenced against an employee of the state pursuant to the provisions of this chapter, an original notice shall be served upon the employee in addition to the requirements of this section. The employee of the state shall have the same period to enter a general or special appearance as the state.

Iowa Code § 669.

The plain language of section 669.4 limits waiver of Iowa's sovereign immunity

to lawsuits brought in Iowa state courts. It is important to note that the Supreme Court recognized in *Feeney* that a state can create a limited waiver of this immunity by consenting to be sued in its own state courts without waiving its Eleventh Amendment immunity from suit in federal courts. *Feeney*, 495 U.S. at 306, 110 S.Ct. 1868 ("A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts," quoting *Florida Dep't of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981)); *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473–74, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) (noting that state does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in state court); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n. 9, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (noting that Court has consistently held that state's waiver of sovereign immunity in state courts is not waiver of Eleventh Amendment immunity in federal courts); *In re Secretary of Dep't of Crime Control and Public Safety*, 7 F.3d 1140, 1147 (4th Cir.1993) (quoting *Feeney*, 495 U.S. at 305–06, 110 S.Ct. 1868), *cert. denied sub nom. Barfield v. Secretary, North Carolina Dep't of Crime Control*, 511 U.S. 1109, 114 S.Ct. 2106, 128 L.Ed.2d 667 (1994); *Harrison v. Hickel*, 6 F.3d 1347, 1354 (9th Cir.1993) (quoting *Feeney*, 495 U.S. at 305–06, 110 S.Ct. 1868); *Kroll v. Board of Trustees of Univ. of Ill.*, 934 F.2d 904, 910 (7th Cir.) (same), *cert. denied*, 502 U.S. 941, 112 S.Ct. 377, 116 L.Ed.2d 329 (1991); *Riggle v. California*, 577 F.2d 579, 585 (9th Cir.1978) ("A state may waive immunity from suit in its own courts without thereby waiving its Eleventh Amendment immunity from suit in federal courts."); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 2036, 138 L.Ed.2d 438 (1997) ("States

have real and vital interests in preferring their own forum [over a federal forum] in suits brought against them, interests that ought not to be disregarded based upon a waiver [of immunity in the state forum]"). Thus, a state may waive its common law sovereign immunity under state law, without waiving its Eleventh Amendment immunity under federal law. This is precisely the situation with the Iowa State Tort Claims Act.

As was noted above, a state's waiver of its Eleventh Amendment immunity will be found "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Feeney*, 495 U.S. at 305, 110 S.Ct. 1868. The Iowa State Tort Claims Act provides that Iowa state district courts have exclusive jurisdiction to determine any suit or tort claim under that act. Absent reference to either Eleventh Amendment immunity or suit in *federal* court, the court cannot find that § 669.4 provides an express waiver of Eleventh Amendment immunity to suits against the state in federal court. *See Angela R.*, 999 F.2d at 325 (the state statute " 'must specify the State's intention to subject itself to suit in federal court,' " quoting *Atascadero State Hosp.*, 473 U.S. at 241, 105 S.Ct. 3142, and also citing *Feeney*, 495 U.S. at 306–08, 110 S.Ct. 1868, and *Burk v. Beene*, 948 F.2d 489, 493–94). As a result, the court cannot conclude that the State of Iowa has waived its Eleventh Amendment immunity in the Iowa State Tort Claims Act since that act does not expressly specify the state's intent to subject itself to suit in federal court. Therefore, this portion of defendants' Motion For Summary Judgment is granted and defendants IDOT and McMenamin, Zitterich, and Vilsack, in their official capacities, are dismissed from the complaint.

## 2. Suit against defendants in their individual capacities

### a. Governor Vilsack

■ Defendant Vilsack asserts that Jacobsen has not generated a genuine issue of material fact that he took a prohibited action himself or failed to take any required action that caused Jacobsen's alleged constitutional deprivation. Thus, he argues that the only basis by which Jacobsen is attempting to impose liability is respondeat superior. The court agrees with this contention. Jacobsen has not contradicted or contested Governor Vilsack's statements that he only became aware of Jacobsen's allegations after Jacobsen sent copies of letters, that were addressed to the other defendants, to Governor Vilsack's office. Consequently, the only basis under which Jacobsen is attempting to impose liability on Governor Vilsack is by means of respondeat superior. However, "[a] supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir.2001); *see Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir.1995). Rather, a supervisor's liability arises if:

> "he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation."

*Tlamka*, 244 F.3d at 635(quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted)). Here, Jacobsen has not directed the court's attention to any record evidence from which to conclude that Governor Vilsack participated in the alleged violations or failed to train or supervise the offending employees. Therefore, Governor Vilsack cannot be held liable in his individual capacity under § 1983 and this portion of defendants' Motion For Summary Judgment is granted.

### b. Assistant Iowa Attorney General Hunacek

■ Defendant Hunacek contends that Jacobsen has failed to generate a genuine issue of material fact that he took an action which deprived Jacobsen of a protected right. In support of his position, defendant Hunacek directs the court's attention to his answers to Jacobsen's interrogatories in which Hunacek states that he did not personally move any of Jacobsen's news racks nor did he instruct anyone else to do so. Hunacek also indicated in his answers to Jacobsen's interrogatories that he did not have authority to give instructions or to make decisions regarding the placement of news racks in rest areas. Thus, here, Hunacek, as the moving party has met his "initial responsibility of informing the district court of the basis for [his] motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548); *see also Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). Because Hunacek has carried his burden under Rule 56(c), Jacobsen "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Jacobsen is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *McLaugh-*

*lin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct. proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.' " *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prods., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that Jacobsen as the the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allison,* 28 F.3d at 66. Here, Jacobsen has not produced any record evidence that would contradict Hunacek's submissions. Thus, the court concludes that Jacobsen has failed to generate a genuine issue of material fact that Hunacek has taken an action which deprived Jacobsen of a protected right. Therefore, Hunacek cannot be held liable in his individual capacity under § 1983 and this portion of defendants' Motion For Summary Judgment is also granted.

### c. *McMenamin and Zitterich's actions*

Defendants further contend that defendant McMenamin and Zitterich's actions in moving Jacobsen's news racks were reasonable in light of the IDOT's ability to regulate such conduct in a non-public fora. It is uncontested here that Jacobsen's right to distribute newspapers is protected by the First Amendment. *See Lovell v. Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 82 L.Ed. 949 (1938) (holding that ordinance under review could not be saved because it

related to distribution and not to publication since "[l]iberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value.") (quoting *Ex parte Jackson,* 96 U.S. 727, 733, 6 Otto 727, 24 L.Ed. 877 (1877)); *Gold Coast Publications, Inc. v. Corrigan,* 42 F.3d 1336, 1343 (11th Cir.1994) ("It is well settled that the right to distribute newspapers through news racks is protected under the First Amendment."), *cert. denied,* 516 U.S. 931, 116 S.Ct. 337, 133 L.Ed.2d 236 (1995); *Sentinel Communications Co. v. Watts,* 936 F.2d 1189, 1196 (11th Cir. 1991) (holding that "there is 'no doubt' that the right to distribute and circulate newspapers through the use of news racks is protected by the first amendment."); *Plain Dealer Publ'g Co. v. City of Lakewood,* 794 F.2d 1139, 1143 (6th Cir.1986) ("The right to distribute newspapers by means of news racks is protected by the First Amendment to the United States Constitution."), *aff'd in part and remanded,* 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *Gannett Satellite Information. Network, Inc. v. Metropolitan Transp.,* 745 F.2d 767, 776 (2d Cir.1984) ("The protection of the First Amendment extends to the sale of newspapers through news racks."); *Miami Herald Pub. Co. v. City of Hallandale,* 734 F.2d 666, 673 (11th Cir.1984) ("There can be no doubt that the right to distribute newspapers by means of news racks is protected by the first amendment to the United States Constitution."). However, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron,* 452 U.S. at 647, 101 S.Ct. 2559 (citations omitted). In other words, the IDOT may restrict Jacobsen's right to distribute his newspapers. *See International Soc'y for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 678, 112 S.Ct. 2701, 120

L.Ed.2d 541 (1992) (noting that "it is also well settled that the government need not permit all forms of speech on property that it owns and controls."). The extent to which the IDOT may restrict Jacobsen's right depends upon how the IDOT's rest areas are characterized for the purposes of First Amendment analysis. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Public property is divided into three categories for this analysis, each of which is governed by different First Amendment standards. *Id.* at 45–46, 103 S.Ct. 948. Publicly-owned property is categorized into three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum.[5] *Lee*, 505 U.S. at 678–79, 112 S.Ct. 2701; *Frisby v. Schultz*, 487 U.S. 474, 479, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988); *Perry Educ. Ass'n*, 460 U.S. at 45–46, 103 S.Ct. 948; *Van Bergen v. Minnesota*, 59 F.3d 1541, 1552 (8th Cir.1995). In its decision in *Lee*, the Court reviewed the appropriate level of review for each of the three forums:

> Under this [the forum based] approach, regulation of speech on government property that has traditionally been available for public expression is subject to the highest scrutiny. Such regulations survive only if they are narrowly drawn to achieve a compelling state interest. *Perry, supra*, 460 U.S. at 45, 103 S.Ct. at 955. The second category of public property is the designated public forum, whether of a limited or unlimited character—property that the State has opened for expressive activity by part or all of the public. *Ibid.* Regulation of such property is subject to the same limitations as that governing a traditional public forum. *Id.*, at 46, 103 S.Ct. at 955. Finally, there is all remaining public property. Limitations on expressive activity conducted on this last category of property must survive only a much more limited review. The challenged regulation need only be reasonable, as long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view. *Ibid.*

*Lee*, 505 U.S. at 678–79, 112 S.Ct. 2701.

Other federal courts that have considered the question have held that rest areas are nonpublic fora. In *Jacobsen v. Bonine*, 123 F.3d 1272 (9th Cir.1997), the Ninth Circuit Court of Appeals held that sidewalks bordering the parking area and facilities of a public rest area located adjacent to an interstate highway could not be considered public fora because:

> These perimeter walkways ... are not traditional sidewalks, accessible to and from general pedestrian traffic. They are accessible only by persons traveling in motor vehicles on interstate highways.... Like the ingress/egress walkways involved in Kokinda, the walkways at issue here do not have the characteristics of public sidewalks traditionally open to expressive activity. These walkways are integral parts of the rest stop areas, which are themselves oases from motor traffic.

*Jacobsen*, 123 F.3d at 1273–74; *see also Jacobsen v. Howard*, 109 F.3d 1268 (8th

---

5. As the Supreme Court instructed in *Perry*: "At one end of the spectrum are streets and parks which 'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " *Perry Educ. Ass'n*, 460 U.S. at 45, 103 S.Ct. 948

(citation omitted). "A second category consists of public property which the state has opened for use by the public as a place for expressive activity." *Id.* The third is "[p]ublic property which is not by tradition or designation a forum for public communication." *Id.* at 46, 103 S.Ct. 948.

Cir.1997) (assuming without deciding that the district court correctly ruled that interstate rest stop areas were nonpublic fora).

In *Lee*, the Court reiterated the reasonableness standard for nonpublic forums: "[t]he restriction " 'need only be reasonable; it need not be the most reasonable or the only reasonable limitation.' " " *Lee*, 505 U.S. at 683, 112 S.Ct. 2701 (quoting *United States v. Kokinda*, 497 U.S. 720, 730, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990)) (quoting in turn *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 808, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). The reasonableness of a challenged regulation must be assessed "in the light of the purpose of the forum and all the surrounding circumstances." *Cornelius*, 473 U.S. at 809, 105 S.Ct. 3439. As the Fourth Circuit has observed:

> There are several obvious considerations in such an assessment. The degree and character of the impairment of protected expression involved, discounted by any mitigating alternatives that remain to the aggrieved party, must be considered. *See Lee*, 505 U.S. at 683–85, 112 S.Ct. at 2708–09; *Cornelius*, 473 U.S. at 809, 105 S.Ct. at 3453. The validity of any asserted justification for the impairment must then be assessed and, if found valid, then weighed in the balance against the impairment. *See id.; Lee*, 505 U.S. at 689–90, 112 S.Ct. at 2713–14 (O'Connor, J., concurring). Because regulations other than mere time, place, and manner restrictions must be designed to "reserve the forum for its intended purposes," the overall assessment must be undertaken with an eye to the "intended purposes" of this particular [facility] terminal and of the ways in which the regulated conduct—here the placement of news racks—might actually interfere with the carrying out of those purposes.

*Multimedia Publishing Co. v. Greenville–Spartanburg Airport*, 991 F.2d 154, 159 (4th Cir.1993).

Turning to an examination of the challenged IDOT policy regarding placement of news racks, the court finds that it is not unconstitutional. First, the policy is facially content neutral. It applies to the placement of all news racks. Nor is there any indication that the policy is enforced in a way that is not viewpoint neutral. The IDOT has presented evidence that it has moved news racks for the Agri News, the USA Today, and Iowa Casino where their news racks were found to be in violation of the IDOT's placement policy. The policy is also reasonable in light of the important safety and access purposes it serves. This is best exemplified by the fact that violations of the policy have led the Federal Highway Administration to demand that the IDOT submit a remediation proposal to correct deemed violations of the ADA. Requiring that news racks be placed at rest areas in such a manner so as not to be a safety hindrance or a maintenance obstacle is not an unreasonable limitation of First Amendment freedoms. Therefore, based on the limited summary judgment record before it, the court concludes that the Iowa rest areas are nonpublic forums in which the application of the IDOT's restrictions on the placement of news racks is entirely reasonable and viewpoint neutral. Thus, defendant McMenamin and Zitterich's actions in moving Jacobsen's news racks to place them in conformity with the IDOT's policy regarding new racks was reasonable and neither defendant McMenamin or Zitterich are liable in their individual capacities to plaintiff Jacobsen for damages pursuant to his claim under § 1983. Therefore, this portion of defendants' Motion for Summary Judgment is also granted.

## III.  CONCLUSION

The court concludes that Jacobsen's claims under 42 U.S.C. § 1985(3) fail as a matter of law because Jacobsen has not presented any evidence showing that the alleged conspiracy was motivated by any animus toward him as a member of a protected class.  The court further finds that the doctrine of sovereign immunity precludes Jacobsen's claims under 42 U.S.C. § 1983 against the IDOT and defendants McMenamin, Zitterich and Vilsack in their official capacities.  The court also concludes that Jacobsen has not directed the court's attention to any record evidence from which to conclude that Governor Vilsack participated in the alleged violations or failed to train or supervise the offending employees.  As a result, Governor Vilsack cannot be held liable in his individual capacity under § 1983.  The court also finds that Jacobsen has failed to generate a genuine issue of material fact

that defendant Hunacek took an action which deprived Jacobsen of a protected right.  Thus, Hunacek cannot be held liable in his individual capacity under § 1983.  Moreover, the court concludes that the Iowa rest areas are nonpublic forums in which the application of the IDOT's restrictions on the placement of news racks is entirely reasonable and viewpoint neutral.  Thus, defendant McMenamin and Zitterich's actions in moving Jacobsen's news racks to place them in conformity with the IDOT's policy regarding news racks was reasonable and neither defendant McMenamin or Zitterich are liable in their individual capacities to plaintiff Jacobsen for damages pursuant to his claim under § 1983.  Therefore, defendants' Motion for Summary Judgment is **granted**.[6]  This case is dismissed in its entirety.

**IT IS SO ORDERED.**

---

6.  The court notes that the only claim remaining in this case is defendants' counterclaim for sanctions and an injunction requiring Jacobsen to comply with the IDOT's restrictions on the placement of news racks at Iowa rest areas.  The court concludes *sua sponte* that neither sanctions nor injunctive relief is warranted here.  The court recognizes that " '[t]he imposition of sanctions is a serious matter and should be approached with circumspection.' "  *Lupo v. R. Rowland & Co.*, 857 F.2d 482, 485 (8th Cir.1988) (quoting *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir.1987)), *cert. denied*, 490 U.S. 1081, 109 S.Ct. 2101, 104 L.Ed.2d 662 (1989).  Federal Rule of Civil Procedure 11 imposes upon attorneys and unrepresented litigants an affirmative duty to conduct a competent and reasonable inquiry of the facts and of the law in advance of filing any court papers.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir.1988) (en banc).  As a result, Rule 11 sanctions are appropriate if a party brings either a frivolous action or an action for an improper purpose, "such as to harass or to cause unnecessary

delay or needless increase in the cost of litigation."  FED. R. CIV. P. 11(b); *see Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994); *Kurkowski v. Volcker*, 819 F.2d 201, 203 (8th Cir.1987).  However, if the complaint "states an arguable claim," sanctions are generally inappropriate.  *Stewart v. American Int'l Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir.1988).  Although the court has granted defendants' Motion for Summary Judgment, it is not axiomatic that sanctions against Jacobsen are warranted.  Because plaintiff Jacobsen is proceeding in a *pro se* capacity, his pleadings are entitled to a permissive reading.  *See, e.g., Kurkowski*, 819 F.2d at 204; *Bigalk v. Federal Land Bank Ass'n of Rochester*, 107 F.R.D. 210, 212 (D.Minn.1985).  Read in such a manner, this court cannot conclude that the instant action is frivolous.  While Jacobsen's allegations may not have been accurate, they appear to accurately state his impression as to past events, and circumstances.  Nor does the court conclude that this case was filed for an improper purpose.  Therefore, defendants' counterclaim for sanctions and injunctive relief is denied *sua sponte*.